Chief Judge Desmond (dissenting).
The majority opinion says: “ No public policy would be offended by consummation of the proposed acquisition.” We think this State’s policy of protecting the trust-held funds of life insurers from any and all diversions is plain, compelling and essential and that it positively forbids what petitioner is trying to do.
Successively, three New York State Superintendents of Insurance have held that this foreign life insurance company may not, under our statutes (Insurance Law, § 42, subd. 3; § 193, subd. 2) and the public policy expressed in those statutes, acquire a controlling stock interest in a fire and casualty insurer. Each Superintendent in turn has taken the position that such an acquisition by a life insurance company is an indirect subversion of the New York statutes which forbid life insurance companies, domestic or foreign, from carrying on in this State any kind of business except that of effecting insurance on human lives.
No amount of exegesis can get rid of subdivision 3 of section 42, and subdivision 2 of section 193. Those two statutes with notable clarity deny the Superintendent power to license any foreign life insurer to write nonlife policies in this State. The majority says that these sections permit an out-of-State life insurance company to own outright and thus control absolutely other companies which are licensed to carry on the much more hazardous and unpredictable businesses of writing fire and casualty policies. The statutory bans, say the majority, must be read with extreme literalness so as to allow a foreign life insurer to own and operate fire and liability insurers, so long as the life company does not in its own name issue fire or liability policies. If that is all that subdivision 3 of section 42, and subdivision 2 of section 193 mean, then, so far as protecting the holders of life insurance, they mean nothing at all. Section 193 came into the Insurance Law as part of the 1939 revision. Its prohibition against alien life insurers being given licenses to do.££ any kind or kinds of business ” other than life, and the even more rigid ban against domestic life insurers’ controlling any other corporations (Insurance Law, § 81, subd. 13), have ever since been fully recognized and accepted by the Insurance *57 Department and by all the 70 life companies doing business in this State, with the sole exception of this petitioner. Petitioner itself, which has been licensed in New York for nearly a century, never claimed until 1955 any right to take over a nonlife insurance company. Petitioner now asserts that the Superintendent’s 1955 ruling against the validity of this acquisition overturned 50-year-old Insurance Department statutory interpretation and practice. The opposing fact is, however, that during those 50 years neither petitioner nor any other life insurer, domestic or alien, ever applied for permission or claimed the right to buy control of any nonlife insurer. Two foreign-incorporated life companies (.¿Etna and Travelers) had acquired fire and casualty companies in 1906 and 1907 when the then existing statutes (not, of course, including §§ 42 and 193 added in 1939) were not regarded as forbidding such acquisitions, and the Insurance Department has never compelled Travelers or .¿Etna to dispose of those nonlife companies. As we see it, the validity of the Superintendent’s failure to apply sections 42 and 193 to those two companies is, as we shall later explain, not within the issues in this suit and cannot authorize the granting to petitioner of permission to violate the law.
The first part of petitioner’s argument, as we have seen, calls for a strict, literal (and destructive) interpretation of sections 42 and 193 as intending to prohibit only the direct writing of nonlife policies by alien life insurers. In the second half of its argument petitioner claims to find support in subdivision 1 of section 90 of the Insurance Law, quoted in the majority opinion’s footnotes. When petitioner in 1955 first asked the Superintendent for approval of its proposed acquisition of a fire and casualty company, the Superintendent (and the Attorney-General) looked no further than subdivision 1 of section 90, since that statute plainly said that a foreign insurer’s investments had to comply with the investment limitations imposed by the Insurance Law on a domestic life insurer and a domestic company was forbidden by subdivision 13 of section 81 from owning more than 2% of the stock of any other corporation. In 1958 subdivision 1 of section 90 was amended to say that a foreign insurer’s investments would, for section 90 purposes, be deemed to comply with the investment requirements imposed on domestic companies if the foreign corporation’s admitted assets *58 were sufficient for that purpose. If the 1958 amendment had ended there, it could plausibly be asserted that a foreign life insurer was no longer forbidden to own nonlife companies, provided its assets other than the nonlife corporate stocks were sufficient in amount and value. But any such possible effect was carefully prevented by the addition to section 90 in 1958 (by the same chapter 981 of that year) of a new subdivision 3. New subdivision 3 says that: “ Nothing in this section shall be construed to relieve any foreign or alien insurer from compliance with any other provision of this chapter.” In other words, section 90 was being amended to change the method of qualifying and valuing a foreign company’s assets but not to remove any other prohibitions of the Insurance Law. Sections 42 and 193 remained in force to stop a foreign life insurer (or domestic life insurer) from engaging in any nonlife insurance business. The Governor, in approving the 1958 amendment, so understood the situation (N. Y. Legis. Annual, 1958, p. 500).
Many other sections of the Insurance Law are cited by appellant but none of them have any direct bearing on our problem. Sections 85, 86 and 90 in explicit terms allow foreign and domestic fire and casualty insurers to invest in common stocks including life insurance company stocks. The majority opinion says that no sound explanation has been given for permitting casualty companies to invest in life insurance stocks, and not vice versa. The explanation is in the very nature of life insurance. A life insurance company holds its policyholders’ funds in trust for the protection of their beneficiaries against want. Those trust funds, conservatively and prudently invested to serve the high trust purpose on the happening of the inevitable event insured against, should not be subjected even in the most remote way to the hazards of other kinds of insurance. Nor should the life insurer’s trusteed funds be, by investment in other insurance stocks, indirectly subjected to the other company’s less restrictive investment policies. If any further explanation of the public policy is sought, it can be found in the Armstrong Committee Reports of 1906 (see Vol. 10, p. 385 et seq.) which described the life insurance companies of that day as transacting through stock ownership 1 ‘ the business of banks and trust companies ’ ’, reminded us of the life companies’ duty of conservatism in investment, rejected the idea that life companies should be *59 allowed to make more money by speculation, and warned that a life insurer which gets control of companies in other business will end up by managing those other companies and thus engaging in their separate businesses.
Petitioner gets no rights from the Superintendent’s continuing the licenses of two other alien life insurers, despite their ownership for 55 years of nonlife companies. The Superintendent may be in error (the Appellate Division thought that he is) in failing to apply sections 42 and 193 to those two others but his error, if any, does not make out such a case of conscious discrimination as would require for its cure that petitioner, too, despite the statutes, have a permission which our law forbids.
Petitioner’s brief concludes by charging that New York’s Superintendent of Insurance is regulating petitioner’s activities outside the State “ in a way which bears no reasonable relation to any need for the protection of the people of New York.” Supervision in this State of insurance companies, especially life companies, has been the efficiently conducted business of our Legislature and our Insurance Department for a good many years. Licenses are issued annually so that control may be continuous. If that control does not, or constitutionally may not, include refusing a license to an out-of-State life insurer which puts itself in charge of other kinds of businesses, our system of supervision has a built-in weakness. Public policy dictates that we avoid reaching decisions which produce such results.
The judgment should be affirmed, with costs.
Judges Fuld, Froessel and Van Voorhis concur with Judge Foster; Chief Judge Desmond dissents in an opinion in which Judges Dye and Burke concur.
Judgment reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.